IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

STATE OF WISCONSIN,

                        Plaintiff,

    v.

HO-CHUNK NATION,

                        Defendant.

OPINION AND ORDER

05-cv-632-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff State of Wisconsin filed this action in 2005 to compel arbitration of disputes arising under its gaming compact with defendant Ho-Chunk Nation. Judge Shabaz compelled arbitration and the Nation appealed, arguing that this court lacked subject matter jurisdiction. The court of appeals agreed with the Nation and remanded the case with instructions to dismiss it. <u>Wisconsin v. Ho-Chunk Nation</u>, 463 F.3d 655, 661 (7th Cir. 2006)(<u>Ho-Chunk I</u>). When it did so, it suggested the possibility of permitting amendment of the complaint on remand, <u>id.</u>, a suggestion Judge Shabaz adopted on December 22, 2006.

      The Nation moved for dismissal of the amended complaint on the grounds of sovereign immunity and lack of subject matter jurisdiction or, in the alternative, for summary judgment on a variety of claims. On March 9, 2007, Judge Shabaz denied the

1

Nation's motion to dismiss, holding, among other things, that the court had jurisdiction over the controversy and that the Nation was not immune from suit. The Nation took an interlocutory appeal from the order on March 14, 2007, challenging the denial of its immunity defense. The court of appeals held that the district court has jurisdiction over the pending claims and that the Nation had waived its immunity from suit. Wisconsin v. Ho-Chunk Nation, 512 F.3d 921 (7th Cir. 2008)(Ho-Chunk II). The court of appeals added that the court had erred in addressing the merits of the Nation's summary judgment motions before resolving arbitrability and remanded the case to the district court for a determination of arbitrability of the State's causes of action against the Nation.

Following the remand order, the state moved for an order compelling arbitration, which was opposed by the Nation. The Nation moved for summary judgment, arguing that it would be error for the court to order arbitration before deciding whether, in entering into a gaming compact with the Nation, the governor had the authority to agree to a term in perpetuity and a waiver of the state's immunity from suit.

I now conclude that claims 3, 4, 5 and 6 of the amended complaint are subject to arbitration under the terms of the parties' agreement. The Nation's motion for summary judgment will be denied; the present claims do not require an independent determination of the validity of the second amendment, but only a determination of the effect Panzer v. Doyle, 2004 WI 52, 271 Wis. 2d 295, 680 N.W.2d 666, on the compact, and that issue can

2

be decided in the arbitration proceeding. The parties will be ordered to resume arbitration and I will stay further proceedings in this court pending arbitration.

The following undisputed facts are relevant to resolution of the pending motions.

## UNDISPUTED FACTS

In 1992, the State of Wisconsin entered into a gaming compact with the HoChunk Nation, under the Indian Gaming Regulatory Act of 1988. The parties amended the compact in 1998 and amended it a second time in 2003. The 2003 second amendment made the compact of indefinite duration, expanded the scope of permitted class III gaming and increased the payments to the state. Paragraph 11 of the second amendment incorporated the following provisions into the compact:

> Section XXIII. DISPUTE RESOLUTION.
>
> If any dispute arises between the Parties regarding the interpretation or enforcement of the Compact, Amendment and this Second Amendment, except as otherwise provided in this Second Amendment, that dispute ("Dispute") shall be resolved in accordance with the following procedure:
>
> A. <u>Meet and Confer.</u>  Any party may serve a written notice of violation on the other Party setting forth the nature of the violation and a proposed remedy. . . . the parties shall meet and confer within three (3) business days from the date of expiration of the first notice, for a reasonable period of time not to exceed ten (10) days, unless the Parties agree that they have reached an impasse. . . .
>
> B. <u>Binding Arbitration.</u>  If the Parties do not resolve the dispute to their

3

>  mutual satisfaction through the meet and confer process set forth above, either Party may serve a demand for arbitration on the other Party. In that event, the Parties shall resolve the Dispute by binding arbitration. . . . Any action to compel arbitration, determine whether an issue is arbitrable or to confirm an award entered by the arbitrator shall be brought in the United States District Court for the Western District of Wisconsin under the Federal Arbitration Act, 9 U.S.C. Sections 1, et seq.
>
> * * *
>
> Section XXIV. SOVEREIGN IMMUNITY
>
> A. Unless the parties agree otherwise, if a dispute arises regarding compliance with or the proper interpretation of the requirements of the Compact under Sections IV (Authorized Class III Gaming), XXIII (Dispute resolution), XXIV (Sovereign Immunity) XXXIV (Payment to the State), and XXV (Reimbursement of State Costs), the dispute shall be resolved by the United States Court for the Western District of Wisconsin.

Paragraphs 15A and B of the second amendment provide that in the event any portion of the second amendment "is found by a court of competent jurisdiction to be unenforceable or invalid," the parties "shall negotiate in good faith to reach agreement on substitute provisions."

On May 13, 2004, the Wisconsin Supreme Court decided Panzer v. Doyle, holding invalid a compact amendment between Wisconsin and the Forest County Potawatomi as exceeding the governor's authority under the Wisconsin Constitution and unlawfully authorizing games precluded by the Wisconsin Constitution. The Forest County Potawatomi amendment is similar to the one agreed to by the State and the Nation, which

4

led the Nation to take the position that Panzer invalidated key provisions of the second amendment between it and the State. It ceased operation of its expanded class III games and stopped making the increased payments it had agreed to under the amendment. The State contended that Panzer did not invalidate the second amendment agreed to by the Nation and insisted on the continuation of payments.

The parties met in an attempt to renegotiate the compact but their efforts failed. On June 23, 2005, the Nation filed a complaint in arbitration under paragraph 11, § XXIII(B), of the second amendment, alleging that Panzer barred the continuation of the class III games allowed in the second amendment and seeking damages and reformation of the compact. It contended that the State had breached the compact by making false representations concerning the Wisconsin governor's authority and had breached its covenant of good faith and fair dealing. The State counterclaimed in arbitration for a determination that the provisions of the second amendment were not invalidated by Panzer and that the State was liable for all payments due and to become due under the compact.

After the parties failed in their attempts to appoint an arbitrator in accordance with the process of paragraph 11, § XXIII (B), the State began this action to appoint an arbitrator and compel arbitration. Judge Shabaz granted the relief sought and the Nation appealed on the sole ground that the court lacked jurisdiction to compel arbitration. It did not challenge the merits of the order or the arbitrability of the claims referred to arbitration.

5

The court of appeals agreed with the Nation that the district court did not have subject matter jurisdiction to hear the parties' dispute or to compel arbitration. The Federal Arbitration Act did not provide a basis for jurisdiction and no independent basis existed under the Indian Gaming Regulatory Act, because neither party had pleaded any of the three provisions in the Act for which Congress had made an explicit grant of federal jurisdiction. The court remanded the case. Immediately thereafter, the State filed an eight-count amended complaint. In counts one and two, the State seeks both a declaration that the Nation's class III games are not being conducted in accordance with the compact and an injunction of the class III gaming, under 25 U.S.C. § 2710(d)(7)(A)(ii). In count three, the State alleges breach of contract for failure to pay the amounts due under the second amendment. In count four, the State seeks a declaration that it has negotiated in good faith in accordance with 25 U.S.C. § 2710(d)(7)(B). In counts five and six, the State seeks a declaration that the Nation is liable for payments due and to become due under the second amendment. In the final two counts, the State seeks to compel arbitration and reappoint the arbitrator. In response to the amended complaint, the Nation advanced counterclaims for failure to negotiate in good faith in accordance with 25 U.S.C. § 2710(d)(3) and (7), breach of contract for failing to recognize that <u>Panzer</u> triggered paragraph 15 of the second amendment and breach of contract for misrepresentation of the governor's authority to enter into a compact.

The Nation moved to dismiss the amended complaint or alternatively, for summary judgment. It contended that although 25 U.S.C. § 2710(d)(7)(A)(ii) of the Indian Gaming Regulatory Act grants federal jurisdiction over a claim by a state to enjoin class III gaming, the provision was inapplicable in this case and that the Nation's sovereign immunity prevented the district court from hearing the case. However, in its January 12, 2007, brief in support of the motion to dismiss, the Nation continued to advocate arbitration of the dispute: "If the Court concludes that it has jurisdiction to address the State's claims, the Nation urges the Court to compel arbitration in a manner that will lead to a resolution of the dispute between the parties." Dkt. #86 at p. 3. At the same time, it contended that arbitration should not be compelled because the Indian Gaming Regulatory Act preempted the compact's dispute resolution provision.

Judge Shabaz found that jurisdiction was present under § 2710(d)(7)(A)(ii) as to the first two counts of the State's complaint (seeking to enjoin the Nation's Class III gaming) and as to the remaining counts under the supplemental jurisdiction conferred in 28 U.S.C. § 1367. Turning to the merits of the Nation's motion for summary judgment, he found that the Panzer decision did not constitute a finding by a court of competent jurisdiction that the second amendment to the compact was invalid, making it unnecessary for the parties to renegotiate any provisions. He denied the Nation's other arguments except with respect to the State's contention that the Nation had refused to negotiate or arbitrate under the terms of the compact.

7

The Nation appealed the court's finding that the suit was not barred by the Nation's sovereign immunity. In its appeal, the Nation maintained that its waiver of immunity was limited to participation in arbitration. After addressing and rejecting this argument, the court of appeals noted this court's obligation to determine the scope of the arbitration agreement and remanded for a determination of the arbitrability of the State's claims. Ho-Chunk II, 512 F.3d at 940.

On January 25, 2008, the Nation filed an action in the Circuit Court for Dane County, Wisconsin, seeking a determination that the governor lacked authority to enter into a compact of indefinite duration. The parties subsequently agreed to stay that proceeding.

OPINION

In response to the direction of the court of appeals to determine arbitrability, the Nation abandoned its previously unwavering advocacy for arbitration and now takes the position that none of the issues are arbitrable. It has separately moved for summary judgment, arguing that the indefinite duration provision of the compact is invalid and that the issue must be resolved by the court prior to arbitration. The State argues that claims 3, 4 and 6, the contract based claims, are subject to arbitration, but that the statutory claims under Indian Gaming Regulatory Act (claims 1, 2 and 5) are not. The parties agree that claims 7 and 8 must be resolved by the court. I conclude that claims 3, 4, 5 and 6, as well

8

as the Nation's counterclaims, are subject to arbitration and that the Nation's motion for summary judgment must be denied because it does not involve a claim that is before the court.

### A. Determination of Arbitrability

The Federal Arbitration Act creates a body of federal law governing arbitrabilty of claims potentially subject to an arbitration agreement. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983). As a matter of federal law, doubts concerning the scope of an arbitration provision are resolved in favor of arbitration. Id. at 24-25. In determining the scope of the arbitration provision, ordinary state law contract principles are applied. Hill's Pet Nutrition, Inc. v. Fru-Con Construction Corp., 101 F.3d 63, 65-66 (7th Cir. 1996).

The starting point in the analysis is the language of compact §§ XXIII (Dispute Resolution) and XXIV (Sovereign Immunity), as adopted in paragraph 11 of the second amendment. Section XXIII is a broad arbitration provision providing for negotiation, followed by arbitration, of "any dispute [that] arises between the Parties regarding the interpretation or enforcement of the Compact, Amendment and this Second Amendment." However, the introductory paragraph of § XXIII also includes the limiting phrase "except as otherwise provided in this Second Amendment." Section XXIV provides that disputes

9

involving the key provisions of the compact, including payments to the state and authorized class III gaming "shall be resolved by the United States Court for the Western District of Wisconsin." However, this provision is prefaced by the phrase "unless the parties agree otherwise." The language of the two provisions thus creates potentially circular logic, with each provision preserving the breadth of the other. The question is how to harmonize the provisions, giving meaning to all of the language.

Given the grammatical structure and context of the provisions, the only reasonable approach is to conclude that the prefatory phrase in § XXIV preserves the broad arbitration provision of § XXIII. Section XXIV waives sovereign immunity and memorializes the parties' consent to the jurisdiction of this court for disputes of key provisions. The opening phrase, "Unless the parties agree otherwise," leaves arbitration as the method of dispute resolution when one of the parties demands it in accordance with § XXIII(B). In such a case the parties have agreed to resolve the dispute otherwise than in court. If neither party demands arbitration, the matter may be resolved in court in accordance with § XXIV(A). If the dispute involves a section not identified in § XXIV(A), the matter must be resolved in accordance with the meet and confer and arbitration procedures.

Unlike the limiting phase at the beginning of § XXIV, the phrase in § XXIII appears in the middle of the provision: "except as otherwise provided in this Second Amendment, that dispute ("Dispute") shall be resolved in accordance with the following procedure." The

10

limiting phrase precedes and modifies the requirement that the dispute "shall be resolved in accordance with the following procedure." The "except as otherwise provided" limitation is an apparent reference to alternative arbitration *procedures* that provide different arbitration procedures for particular disputes, such as those described in paragraphs 4 and 10 of the second amendment.

This interpretation has several advantages. First, it attributes a reasonable meaning to all language in the provisions. Second, in accordance with the mandate of the Federal Arbitration Act, it resolves ambiguity in favor of a broader scope of arbitration. Third, and perhaps most persuasive, it comports with the obvious intent of the parties as evidenced by their performance under the contract. Stradinger v. City of Whitewater, 89 Wis. 2d 19, 33, 277 N.W.2d 827 (1979) (construction adopted by parties in their dealings afforded great weight). Both parties have maintained consistently that the determination of the amounts owed under the compact is a matter to be resolved by the arbitrator. In fact, by previously proceeding to arbitration on these claims, the parties have established that the issues in the arbitration complaint are arbitrable. Butler Manufacturing Co. v. United Steel Workers of America, AFL-CIO-CLC, 336 F.3d 629, 635 (7th Cir. 2003).

The parties are in apparent agreement that the claims to enjoin class III games (counts 1 and 2) are not arbitrable. Furthermore, because the potential right to enjoin class III gaming is strictly statutory, neither party could frame a reasonable argument that these

11

claims constitute a dispute "regarding the interpretation or enforcement of the Compact." In any event, because service of a demand for arbitration of a claim is a prerequisite to arbitrability and neither party has demanded arbitration of these claims, they are not arbitrable. Although arbitration will determine the underlying contractual obligations of the parties with respect to class III gaming and payments under the compact, the propriety of a statutory injunction against class III gaming remains a determination for the court.

Counts 3, 5 and 6 fall precisely within the parameters of the arbitration provision because all three relate to an alleged breach of the compact for failure to make required payments and therefore constitute disputes regarding interpretation and enforcement of the compact. Count 4 and the Nation's related counterclaims invoke the statutory obligation to negotiate in good faith imposed by 25 U.S.C. 2710(d)(7))(B), suggesting that the claims may not involve the interpretation or enforcement of the compact, but rather are separate statutory claims. However, paragraphs 15(A) and (B) of the second amendment adopt and incorporate the identical obligation that the parties "shall negotiate in good faith to reach agreement on substitute provisions," thereby incorporating the statutory obligation into the compact. As a result, the claims for failure to negotiate in good faith are equally contractual and statutory and are subject to arbitration. The fact that such a claim may also be a separate federal cause of action does not override the parties' agreement to arbitrate the issue. Butler Manufacturing, 336 F.3d at 634.

The State is entitled to an order that claims 3, 4, 5 and 6 are subject to arbitration, together with the Nation's breach of contract counterclaims, and that the parties are compelled to arbitrate in accordance with their agreement.

### B. The Nation's Motion for Summary Judgment

The Nation's separate motion for summary judgment characterizes the issue of the Wisconsin governor's authority to enter into a compact of indefinite duration as a separate non-arbitrable claim that must be resolved by the court before arbitration. The only claim presented in this action, the claim resolved by Judge Shabaz on summary judgment and vacated by the court of appeals, is that Panzer rendered the duration clause invalid or unenforceable. Neither party has sought a determination by this court that the duration clause is unenforceable, even if Panzer is inapplicable. The Nation's decision to bring an independent state case in an effort to obtain such a determination and that it submitted all of its present claims to arbitration confirms my conclusion that such a claim has never been alleged in this action.

The question of Panzer's effect on the validity and enforceability of the compact is the principal issue before the arbitrator. In accordance with the directive of the court of appeals, the matter must be referred to arbitration. The issue the Nation attempts to raise

13

in its motion for summary judgment is not part of any pending claim and must therefore be denied.

### C. Appointment of Arbitrator and Stay of Proceedings

Although the previous order of Judge Shabaz appointing the Honorable William A. Norris as arbitrator was vacated on jurisdictional grounds in Ho-Chunk I, 463 F.3d at 662, the parties have shown no reason to reconsider the appointment decision. The Nation proposed Judge Norris initially as an appropriate arbitrator and the State seeks to keep him in that role. Efficiency will be advanced by proceeding with an arbitrator already familiar with the issues and positions of the parties. Accordingly, I will reappoint Judge Norris to continue arbitration proceedings if he remains willing to serve in that capacity.

The non-arbitrable portions of the case, including a potential injunction of class III gaming, will be informed, if not fully resolved by resolution of the issues properly before the arbitrator. Because resolution of the issues subject to arbitration are likely to resolve all issues material to the non-arbitrable claims, I am compelled to stay proceedings on the non-arbitrable claims for injunctive relief. Volkswagen of America, Inc. v. Sud's of Peoria, Inc., 474 F.3d 966, 972 (7th Cir. 2007). Although it may be overly optimistic to predict that arbitration will dispose of all issues, particularly given the history of this litigation, that possibility suggests the proper procedural course is to close the case administratively, subject to immediate reopening if all issues are not resolved in arbitration.

ORDER

IT IS ORDERED that motion for summary judgment filed by defendant Ho-Chunk Nation (dkt. #128) is DENIED.

FURTHER, IT IS ORDERED that plaintiff State of Wisconsin's motion to compel arbitration (dkt. #125) is GRANTED, that the Honorable William A. Norris is appointed pursuant to 9 U.S.C. § 5 to arbitrate the dispute between the parties, subject to his consent to accept the renewed appointment.  Because the arbitration proceeding may resolve all of the issues between the parties and make any further proceedings in this court unnecessary, the clerk of court is directed to close the case administratively.  In the event the arbitration does not resolve all of the issues, the case will be reopened immediately upon motion of any party and will be set promptly for trial, with the parties retaining all rights they would have had if the case had not been closed for administrative purposes.

Entered this 10th day of July, 2008.

BY THE COURT:

*Barbara B. Crabb*

_____
BARBARA B. CRABB
District Judge

15